Moore *v.* Holmes.

---

ALBERT MOORE, JUDGE OF PROBATE *vs.* WALTER R. HOLMES
AND ANOTHER.

The making of a full and correct inventory of the property of an estate is one of the most important duties of an executor or administrator.

Where property comes into the hands or to the knowledge of an executor or administrator after an inventory has been made, it is his duty to make an additional inventory.

A suit on the probate bond is a proper remedy for the neglect to inventory property.

A declaration on a probate bond charged that the executor received certain personal property, consisting of money and choses in action, which he had never inventoried. The defendants pleaded in bar a settlement of the administration account in the court of probate, setting out the account as settled. By the account thus set out it appeared that the property in question had not been accounted for. Held that, upon the facts admitted by the plea, such a settlement could not bar the action on the probate bond.

In the administration account as settled the executor had not charged himself with any property whatever, but in the place of such a charge there was the following entry :—" The appraisers made no return of personal property." Held, that the court of probate, in allowing the account, could not be regarded as having found the fact that there was no property to be appraised, much less that property had not since come into the hands of the executor.

DEBT on a probate bond, given for the faithful discharge, by Walter R. Holmes one of the defendants, of his duty as executor of the will of John Holmes, deceased. The condition of the bond, which was dated April 16, 1862, was as follows:—that the executor " shall make a true and perfect inventory of all the goods, chattels, credits and estate of the said deceased, which have come or shall come to his hands, possession or knowledge, or into the hands or possession of any other person for him, and shall exhibit the same into the registry of the court of probate in the district of Salisbury, on or before the 15th day of May next ; and shall well and truly administer said estate according to law, and make a true and just account of his administration on or before the 26th day of November, 1862."

The declaration alleged that the executor had not inventoried any property whatever, and that prior to the 26th day of November, 1862, a large amount of property belonging to the estate, consisting of money and notes of the amount and value of three thousand four hundred dollars, had come into his possession as executor, but that he had ever since neglected and refused to inventory the same. The defendants pleaded a general denial, and the following plea in bar :—

That at a court of probate holden at Salisbury, within and for the district of Salisbury, on the 21st day of August, 1862, the appraisers appointed to make an inventory and appraisement of the estate made their report to said court, and said court found that said appraisers were legally sworn, and did accept said return, and ordered the same to be recorded and lodged on file, and the following is the record thereof, viz : " To the probate court for the district of Salisbury. Estate of John Holmes, late of Salisbury, in said district, deceased. The subscribers, appointed appraisers on said estate, having been legally sworn, have called on W. R. Holmes, the executor on said estate, for the property of the deceased, who affirms that there was no estate, real or personal, belonging to the said John Holmes, deceased, which he had not disposed of during his life time. Salisbury, August 19th, 1862.. Horace Hollister, Oliver Jewell, appraisers." And that at a court of

probate, holden at said Salisbury on the 10th day of November, 1862, it was ordered that said executor should exhibit his administration account to said court for adjustment on the 26th day of November, 1862, at nine o'clock, forenoon, and that all persons interested in said estate might be notified thereof said executor was directed to cause said order to be posted on the sign-post at Chapinville in said Salisbury. And the defendants say that said executor, on said 10th day of November, 1862, did, in pursuance of said direction, cause said order to be posted on said sign-post, and afterwards at a court of probate holden at said Salisbury, on the 26th day of November, 1862, at nine o'clock, forenoon, the said executor appeared in court at the time assigned, and made the following return under oath, in relation to said order, and presented to said court the annexed account, viz:—" To the probate court of the district of Salisbury. Estate of John Holmes, late of Salisbury, in said district, deceased. The subscriber hereby makes return, that, pursuant to the order of said court made on the 10th day of November, 1862, he posted a notice that the administration account with said estate would be exhibited for adjustment at the probate office in Salisbury, on the 26th day of November, 1862, at nine o'clock, forenoon, on the sign-post at Chapinville, in said Salisbury, and pursuant to said order and notice he exhibits the said administration account as follows :

Walter R. Holmes, executor, in account with said estate, Dr.

(The appraisers of said estate made no return of personal property.)

Contra,                                                          Cr.

December 23d, 1861, By paid G. H. Bundy's bill for
  coffin and attendance with hearse,          .         . $21.75
January 14th, 1862, By paid Edwin Dauchy's account,   5.58
February 6th,  "      "      Elder for taxes, list 1860, 10.67
August 26th,   "      "      H. S. Gillett, $25, print-
  ing, $1,          .          .         .         .         26.00
August 26th, paid court fees,          .         .         . 6.35
                                                          ―――――――
                                                          $70.35 "

Which administration account being sworn to by said execu-
tor was then and there allowed by said court, and is, as the
defendants aver, a full and final settlement of the estate of
the deceased, all of which, by the files and records of said
court of probate ready in this court to be shown, will fully
appear ; and said proceedings of said court have never been in
any part thereof appealed from, vacated, reversed or set aside.
All which the defendants are ready to verify. Wherefore they
pray judgment if the plaintiff ought to be received against
said records to have and maintain his said action against
them.

The plaintiff demurred to this plea, and the case was reser-
ved on the demurrer for the advice of this court.

*G: C. Woodruff* and *Andrews*, in support of the demurrer.

The defendants' plea admits (by not denying the allegations
in the declaration,) that a large amount of property belong-
ing to the estate came to the knowledge of the executor which
it became his duty to inventory. This he has failed to do. The
return of the appraisers is an utter nullity, nor has the court
of probate power to give such a return any validity. *Sears*
v. *Terry*, 26 Conn., 273 ; *Potwine's Appeal from Probate*, 31
id., 381. For this failure to make a true and perfect inven-
tory the defendants became liable to an action on their bond.
*Minor* v. *Mead*, 3 Conn., 289. The court of probate has
never adjudicated upon the question whether or not John
Holmes was possessed of property at his death. The defend-
ants admit that there was property belonging to the estate and
that the executor has not made an inventory ; but they
say that the court has *found* that there was no property, and
if we are aggrieved we must appeal. Has the court so
found ? It nowhere so appears in terms. It can not be
implied from the return of the appraisers, for that is a nullity.
It is not in the administration account, for it appears from the
record set forth in the plea that the executor has wholly
omitted to charge himself with anything. This record is evi-
dence of nothing which is to be made out by inference. A
judgment concludes only those matters necessarily involved

in it. 1 Greenl. Ev., § 528; *Fairman* v. *Bacon,* 8 Conn., 418; *Coit* v. *Tracy,* id., 268; *Dickinson* v. *Hayes,* 31 Conn., 417, 423; *Potter* v. *Hiscox,* 30 id., 508; *Board of Foreign Missions' Appeal from Probate,* 27 id., 344; *Sintzenick* v. *Lucas,* 1 Esp., 44. An action on the probate bond is the proper remedy for heirs or legatees against an executor for not inventorying. *Canfield* v. *Bostwick,* 21 Conn., 550; *Bisco* v. *Bishop,* 1 Day, 15; *Adams* v. *Spalding,* 12 Conn., 350.

*O. S. Seymour,* contra.

The jurisdiction of the probate court is conferred by statute. No such jurisdiction is conferred upon any other court, except upon the superior court by appeal. Its jurisdiction over administration accounts is exclusive and peculiar, but even if concurrent and ordinary only, yet having exercised jurisdiction its judgments are conclusive. The executor in this case was called upon by the court of probate to render his account in the exercise of its power " to call executors to account for and concerning the estate intrusted to them," and exhibited his administration account, and the same was allowed by the court. The legal effect of such a settlement is to exonerate the executor from all claims which were the proper subjects of account before the court. If he had property belonging to the estate then was the time to charge him with it and call upon him to account for it. The object of the probate bond is merely to furnish security for the official good conduct of the executor, not to transfer to courts of law jurisdiction over probate matters and accounts. In general the official misconduct must be established by the probate records themselves, not left to be proved *aliunde.* These views have been fully sanctioned by our own and other courts. *Atwater* v. *Barnes,* 21 Conn., 237; *Goodrich* v. *Thompson,* 4 Day, 215; *Willey* v. *Paulk,* 6 Conn., 74; *Bacon* v. *Fairman,* id., 128; *Edmond* v. *Canfield,* 8 id., 87; *Strong* v. *Bailey,* id., 281; *Beach* v. *Norton,* 9 id., 196, 198; *Olmstead* v. *Brush,* 27 id., 530; *Potter* v. *Hiscox,* 30 id., 508; *Potwine's Appeal from Probate,* 31 id., 381; *Smith* v. *Johnsou,* 15 East,

213; *Wheeler* v. *Van Houton*, 12 Johns., 311; *Phillips* v. *Berick*, 16 id., 136. If it be said that the suit is for not inventorying, as well as for not rendering a true and just account, we reply that the suit is in substance for the latter. The plaintiffs, as residuary legatees, have no interest in having anything inventoried except as part of the account. The only object of the inventory is to aid in the account. Swift says, " it is by the inventory that it is known what the executor is accountable for." 1 Swift Dig., 444. But the inventory is not necessary to give the court jurisdiction over the subject matter. *Rockwell* v. *Sheldon*, 2 Day, 305.

DUTTON, J. This is an action on a probate bond. Such bonds are required by the statute laws of this state on the settlement of every estate. They must be of sufficient amount, and the bondsmen of sufficient responsibility to secure every claim against the estate, and every interest involved in it. The law puts the property into the hands of the executor or administrator as a trustee, to manage and dispose of the same for the parties in interest under the supervision of the judge of probate. One of his most important duties, and this is named in the condition of the bond, is to "make a true and perfect inventory of all the goods, chattels, credits and estate that have or shall come to his hands, possession or knowledge or to the hands, possession or knowledge of any other person for him," and lodge the same with the judge of probate. This must be done within sixty days, unless a sufficient excuse can be shown for a further delay, on a penalty of $17 for every month's neglect. No special provision is made by the statute for the case of other property subsequently coming to the possession or knowledge of the executor or administrator, but the reason and spirit of the law evidently require that an additional inventory should be made, or something equivalent to it.

In *Pratt* v. *Northam*, 5 Mason, 95, it appeared that administration had been granted on an estate in Rhode Island, in the year 1800. The administration bond in that case was almost identical with that given by the defendants. In 1803

money came into the hands of the administrator from an ancillary administration in England. He took no notice of this money in the settlement of the estate. Story, J., says, (page 108,) "What then was the duty of the administrator upon the receipt of these assets? It was plainly his duty to inventory them, and to account for them as part of the testator's estate in his hands and possession." On page 104 he remarks, that " the money received by him through the instrumentality of the ancillary administration in England was clearly assets in his hands, and ought as such to have been accounted for in his administration account."

The great object of this highly important requirement of the law regarding an inventory, is to enable the judge of probate and the parties in interest to know what property belongs to the estate. Without it they could not understandingly call the executor or administrator to an account.

In the present case the bond on which the suit was brought is dated April 16, 1862. The plaintiff alleges that the executor did not make an inventory of all the property belonging to the estate, but that promissory notes and moneys to the amount of several thousand dollars came into his hands, possession and knowledge, before the 26th day of November, 1862, the day of the settlement hereinafter referred to, which he never inventoried. The defendants in answer to this allegation interpose two pleas—one a general denial of the allegations in the declaration, and the other a special plea alleging a settlement of the administration account. Whether the plaintiff will be able to sustain his allegations by proof on the trial of the general issue, remains to be ascertained hereafter. The question for us to determine is only as to the sufficiency of the special plea, to which the plaintiff has demurred.

This plea sets up as a defence a settlement of the executor's administration account with the court of probate on the 26th day of November, 1862, not appealed from. In this account the executor does not charge himself with any assets, but on the contrary enters on the debtor side the following :—

" Walter Holmes in account with said estate, Dr.

" (The appraisers of said estate made no return of personal property.")

He then credits himself with various items, amounting to about seventy dollars. It is the decree of the court of probate approving of this account which the defendants set up as a bar to this action.

The plea does not by way of estoppel allege that any particular fact was found by the court of probate which would preclude an inquiry as to the same fact again. It could not be seriously claimed that the court of probate, in approving such an account as this was, decided that no assets came into the hands or to the knowledge of the executor previous to the settlement. The memorandum of what return the appraisers made presents no such question for adjudication. If it did it would only cover the time previous to the return of the appraisers, and would not apply to the whole time covered by the declaration. The finding of the court of probate could not therefore be pleaded by way of estoppel to the allegations in the plaintiff's declaration, as the question, if any, with regard to assets, which the court of probate was called upon to decide, was not the same as the declaration presents. For such a purpose the plea would be too narrow, and demurrable on that ground.

The plea evidently is founded on the assumption that a settlement of an administration account, approved by the court of probate and not appealed from, is a bar to an action on the probate bond charging the executor with not making a full inventory of the estate. Whether this assumption would be well founded where nothing appears on the pleadings to impeach such a settlement, it is not necessary now to decide.

As this is not, as we have seen, a plea of estoppel, it must be governed by the general rules applicable to special pleas. There is no rule of pleading more firmly established than that the defendant must either deny the material allegations of the plaintiff's declaration or confess and avoid them. 1 Chitty Pl., 472. The plaintiff in his declaration alleges that certain personal property belonging to the estate, came into the hands of the executor, which he did not inventory. In this plea the

defendants do not deny this allegation, and of course must be regarded as admitting it. They plead in bar of this apparently just ground of action on the bond, the settlement of the administration account to which we have referred. The whole account is set out in the plea, and from this it appears that the property which it is admitted the executor received was not brought into it. As the plea is demurred to, the only question is whether such a plea is sufficient in law. That the admitted facts show that there has been a palpable breach of the probate bond is too plain for comment. It is equally clear that if the defendants prevail on this plea the executor on the admitted facts will secure to himself several thousand dollars which do not belong to him, and that he will deprive those for whom he was acting as trustee of this amount. We think that such gross injustice can not be accomplished by such a legal maneuver as this. The executor was not only under obligation by law as a trustee, and by the rules of common honesty as a man, but by the express terms of the bond, " to well and truly administer " the estate. But he admits, as we have seen, that this property came to his hands before he presented his administration account. His account therefore must have been by his own showing false and fraudulent. His obtaining the sanction of the court of probate was itself a violation of his duty and a breach of the bond. In the settlement of an estate the responsibility rests upon the executor to see, so far as is in his power, that every thing is properly done by the court of probate as well as by himself. Even a neglect to procure the necessary decrees from the court of probate has been held to be a breach of the probate bond. *Warren* v. *Powers*, 5 Conn., 373. Much more would the procurement of an illegal or fraudulent decree.

The case of *Pratt* v. *Northam*, 5 Mason, 95, to which we have referred, presents some strong points of resemblance to the present case, although that was a petition in equity, and not a suit on the probate bond. In that case there had been a settlement approved by the court of probate, and the statute of Rhode Island was very strong as to the conclusive

effect of a decree of probate not appealed from; yet Judge Story says, (page 103,) " This language can not be considered as giving a stronger efficacy to a probate decree than a judgment possesses at the common law.   Upon general principles fraud avoids the latter."   He evidently assumes that for obtaining such a decree there would be a remedy on the bond.   He says, (page 104,) " The omission to do so " (that is to account for the assets which the administrator had received from England in his administration account,) " was a departuʮe from his duty, a  breach of  the condition of  his probate bond, and an inexcusable fraud."   We can not see how a plea which admits such a state of facts can possibly be sufficient in law.   To hold a contrary doctrine would enable an executor or administrator  to  perpetrate frauds to  an  unlimited extent He frequently is  the only  person  who  knows what  assets belong to the estate.   He can withhold them from the inventory or administration account without the knowledge of  the parties in  interest.   If they should  be  present  at  the settlement of the account they would be in no situation to dispute its accuracy or to see the necessity of taking an appeal. They will ordinarily trust, as they generally can with safety᭺ to the honesty of the executor or administrator.   On this account there is the greater necessity, if it should be subsequently discovered when too late for an appeal that owing to the fraud of the executor or administrator property belonging to the estate had not been accounted for, that there should be a remedy on the bond.   If in the present case no such fraud has in fact been practised, the defendants will have an opportunity of showing it on the trial of the other issue.

We advise that the plea is insufficient.

In this opinion the other judges concurred.